## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JACK W. HARANG, APLC**                          **CIVIL ACTION**

**VERSUS**                                        **NO. 13-0058**

**NEWTON B. SCHWARTZ, SR.**                       **SECTION: "G"(2)**

### ORDER AND REASONS

This litigation involves a dispute over fees for legal services that Plaintiff Jack W. Harang, APLC ("Plaintiff") provided Defendant Newton B. Schwartz ("Defendant") from late 2010 through early 2011. Before the Court are two pending motions filed by Defendant:

1.  "Defendant's Motion for Judgment as a Matter of Law per F. R. Civ. P. 50(a)(1)(A)(B) and (2) and/or Judgment Notwithstanding the Verdict (JNOV) per F. R. Civ. P. 50(b)(3),"[1] and

2.  "Defendant Newton B. Schwartz, Sr.'s Original Motion for a New Trial."[2]

Having considered the pending motions, the memoranda in support, the memoranda in opposition, the record, and the applicable law, the Court will deny both motions.

### I. Background

**A. Factual Background**

Plaintiff in this matter is Jack W. Harang, APLC ("Plaintiff"), a Louisiana professional law corporation with its principal place of business located in the Parish of Orleans, State of Louisiana.[3] Defendant is Newton B. Schwartz ("Defendant"), a natural person and citizen of Texas.[4]

---

[1] Rec. Doc. 323.

[2] Rec. Doc. 341.

[3] Rec. Doc. 1 at ¶ 1.

[4] *Id.* at ¶ 2; *see also* Rec. Doc. 7, at p. 19.

In late fall 2010, Defendant consulted with Jack W. Harang ("Harang"), an attorney practicing with Plaintiff, to represent Defendant in the matter of *Superior Diving Company, et al. v. Jay Watts, et al.* (the "*Watts* case"),[5] pending in the United States District Court for the Eastern District of Louisiana.[6] Defendant had previously represented Jay Watts, a party in that matter, and "had intervened therein for his attorney's fees costs and expenses."[7] Additionally, Watts had sued Defendant and others for malpractice.[8] Plaintiff was retained "to represent [Schwartz] personally for his claims as an intervenor and in defense of the malpractice claims that were filed against him."[9]

Also in fall of 2010, Defendant retained Plaintiff "to represent him in defense of claims made by Jay Watts against him with the Texas Commission for Lawyer Discipline" (the "Texas Commission case").[10] The claims filed before the Texas Commission arose from the same set of facts as those in the Eastern District of Louisiana case.[11]

Based on the time spent by Harang and other staff on these two matters, Plaintiff sought compensation for legal services in the amount of $193,000.[12]

---

[5]   Civil Action No. 05-197 c/w 08-5095.

[6]   Rec. Doc. 1 at ¶ 6.

[7]   *Id.* at ¶ 7.

[8]   *Id.* at ¶ 7.

[9]   *Id.* at ¶ 9.

[10]   *Id.* at ¶ 10.

[11]   *Id.* at ¶ 11.

[12]   *Id.* at ¶ 12.

**B.      Procedural Background**

Plaintiff filed this suit on January 13, 2013, seeking $193,000 in compensation for legal services rendered.[13] A jury trial on the merits was held from June 23, 2014 to June 26, 2014. Motions for a directed verdict were raised by the parties on three occasions during the course of trial—two times by Defendant and one time by Plaintiff.

Defendant first raised a motion for a directed verdict at the close of Plaintiff's case, which on the real-time transcript begins at 4:35 p.m. on Tuesday, June 24, 2014. In his motion, Defendant argued that Plaintiff had presented insufficient evidence to establish that a contract had been formed and, thus, that Defendant was entitled to judgment as a matter of law. After taking a short recess, the Court denied Defendant's motion beginning on the transcript at 5:29 p.m. that same day.

Plaintiff raised a motion for a directed verdict at the close of Defendant's case, which on the real-time transcript begins at 1:54 p.m. on Thursday, June 26, 2014. In its motion, Plaintiff argued that Defendant had presented insufficient evidence to establish any of his three defenses: (1) accord and satisfaction (2) estoppel and (3) payment and, thus, that the Court should direct a verdict as to each of these three defenses. The Court deferred ruling on Plaintiff's motion.

After Plaintiff raised its motion for a directed verdict at the close of Defendant's case, Defendant re-urged his motion for a directed verdict, which on the real-time transcript begins at 1:57 p.m. on Thursday, June 26, 2014. In his motion, Defendant adopted by reference his earlier motion for a directed verdict and argued that there was insufficient evidence to establish that a contract had been formed and, thus, that he was entitled to judgment as a matter of law. As before, the Court denied this motion.

---

[13]   Rec. Doc. 1.

A verdict was returned by the jury and entered on June 26, 2014. The jury found:

(1)     that an oral contract existed between Plaintiff and the Defendant with regard to Plaintiff's representation of the Defendant in the *Texas Commission of Lawyer Discipline v. Newton B. Schwartz, Sr.*, Case No. 2007-54957 on the Docket of Harris County District Court, State of Texas;

(2)     that the Plaintiff is entitled to damages from the Defendant for services performed in representing him in *Texas Commission of Lawyer Discipline v. Newton B. Schwartz, Sr.*, Case No. 2007-54957 on the Docket of Harris County District Court, State of Texas;

(3)     that the Plaintiff and the Defendant had an oral contract with regard to Plaintiff's representation of the Defendant in the *Watts v. Schwartz, et al.*, C.A. No. 08-5095 c/w 05-0197 on the docket of this court;

(4)     that the Plaintiff is entitled to damages from the Defendant for services performed in representing him in *Watts v. Schwartz, et al.*, C.A. No. 08-5095 c/w 05-0197 on the docket of this court;

(5)     that Defendant has proven accord and satisfaction, estoppel, and payment; and

(6)     that Plaintiff is entitled to $75,000.00 in damages.[14]

On July 7, 2014, before judgment was entered, Defendant filed the pending "Defendant's Motion for Judgment as a Matter of Law per F. R. Civ. P. 50(a)(1)(A)(B) and (2) and/or Judgment Notwithstanding the Verdict (JNOV) per F. R. Civ. P. 50(b)(3)."[15] On July 15, 2014, Plaintiff filed a memorandum in opposition,[16] and, with leave of the Court, Defendant filed a reply on July 30, 2014.[17]

---

[14] Rec. Doc. 318-2.

[15] Rec. Doc. 323.

[16] Rec. Doc. 325.

[17] Rec. Doc. 343.

On July 16, 2014, Plaintiff filed a motion to withdraw its  motion for a directed verdict, which had been made at the close of Defendant's case on June 26, 2014.[18] The Court granted this motion on July 17, 2014.[19]

Also on July 17, 2014, the Court entered judgment in favor of Plaintiff in the amount of $75,000.00, together with all costs of court and judicial interest from the day of demand until paid.[20]

On July 22, 2014, Defendant filed a motion for leave to file "Defendant Newton B. Schwartz, Sr.'s Original Motion for a New Trial."[21] On July 29, 2014, Plaintiff filed a memorandum in opposition addressing the merits of the underlying motion for a new trial.[22] On July 30, 2014, the Court granted Defendant's motion for leave to file,[23] and "Defendant Newton B. Schwartz, Sr.'s Original Motion for a New Trial" was entered into the record.[24] On August 5, 2014, with leave of the Court, Defendant filed "Defendant's Response to Plaintiff's Rec. Doc. 333 '. . .  Plaintiff, Jack W. Harang, APLC's, Response Memorandum to Defendant's Motion in the Alternative per FRCP 8(d)(2) and (3) to Stay and/or Determine Supersedeas Bond (Cash or Suretry) per Pending Disposition of Motion Under 50, 59, and 60 per FRCP 62(b) (Rec. Doc. 330) . . .'; Rec. Doc. 334 '. . . Plaintiff, Jack W. Harang, APLC's Responsive Memorandum in Opposition to Defendant's Alternative Motion for Indicative Ruling and to Stay and/or Bar Enforcement Proceedings and the

---

[18] Rec. Doc. 326.

[19] Rec. Doc. 327.

[20] Rec. Doc. 328.

[21] Rec. Doc. 331.

[22] Rec. Doc. 335.

[23] Rec. Doc. 340.

[24] Rec. Doc. 341.

Rule 62(b) to Enforce Judgment per F.R.C.P. 62(b)(1)(2) and (3) and/or (4) . . .'; and Rec. Doc. 335, '. . . Plaintiff, Jack W. Harang, APLC's Memorandum in Opposition to Defendant, Newton B. Schwartz, Sr.'s Motion for New Trial . . .' and for FRCP 67(a) and (b) Setting a Cash Bond."[25] Although the caption of Defendant's pleading suggests that the document responds to Plaintiff's memorandum in opposition to Defendant's motion for a trial, the text of the pleading does not address Defendant's request for a new trial. Rather, it reiterates arguments in support of Defendant's motion to stay execution of the judgment and his motion for leave to deposit a supersedeas bond; these motions have already been addressed by the Court.[26]

## II. Defendant's Motion for Judgment as a Matter of Law

### A.    Parties' Arguments

#### 1.    Defendant's Arguments in Support

The first motion pending before the Court is "Defendant's Motion for Judgment as a Matter of Law per F. R. Civ. P. 50(a)(1)(A)(B) and (2) and/or Judgment Notwithstanding the Verdict (JNOV) per F. R. Civ. P. 50(b)(3)."[27] In this motion, Defendant purports to

> . . . renew[] and adopt[] by reference per F.R.CIV.P. 10(c) all allegations and exhibits in his previously filed and heard Motions per F.R.CIV.P. 50(a) and/or 50(b)(3). (1) Filed and presented at the close of Plaintiff's case in chief and denied, and (2) presented again "at the close of all" of the evidence—and ruling denied or deferred, and (3) after return of jury verdict and after the jury was discharged per Rule 50(b)(3), and (4) this Renewed Motion for Judgment as a matter of law per F.R.CIV.P. 50(a)(1)(A)(B) and (2) and/or Judgment Notwithstanding the Verdict (JNOV) per F.R.CIV.P. 50(b)(3).[28]

---

[25] Rec. Doc. 349.

[26] *See* Rec. Doc. 353.

[27] Rec. Doc. 323.

[28] Rec. Doc. 323-2 at p. 1.

First, Defendant asserts that "Plaintiff is not in compliance with and failed to comply with Louisiana Art. 1846, Acts 1984 No. 331 § 1, eff. January 1, 1985."[29] He contends: "[u]ndisputedly of record here there was (i) no written contract or agreement by and between Plaintiff and Defendant and (ii) the amount in controversy or value in dispute exceeded $500.[30] According to Defendant, "[a] contract, oral or written, was not proven by at least one witness and other circumstances."[31] Further, Defendant contends that "[t]here were no time records or other corroborating evidence admitted in evidence by the Court."[32] Defendant avers that "[t]he only expert on adequacy of time records and hourly rates of attorneys was precluded by the Court's *sua sponte* rejection of all deposition testimony of Lafayette, Louisiana attorney Ralph Kraft."[33] Further, Defendant maintains, "Plaintiff failed to comply with either (1) Texas Disciplinary Rules of Professional Conduct 1.04(a)-(c) and (2) the Louisiana Bar's same adapted [sic] Nationally Uniform Disciplinary Rule 1.5."[34]

Second, Defendant argues that "[t]he evidence admitted of record cannot and could not reasonably support the jury's verdict for $75,000 or any dollar amount of damages."[35] Defendant claims that "[t]his is especially so, after the jury found application of Defendant's three affirmative

---

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

defenses."[36] Defendant claims that "[t]he $75,000 jury verdict was against the 'clear' and great weight of the evidence."[37]

"Alternatively and additionally," Defendant contends that "Plaintiff's trial tactics, prejudicially and incurably and materially affected Defendant's substantive rights and prejudice."[38] Specifically, Defendant points to Plaintiff's questions regarding:

(1)      "[p]rior 1989 Texas bar disbarment suit, resulting in an agreed 60 day suspension from the practice of Law July-August 1989";[39]

(2)      "Defendant's previously filed civil suits, including his suing Michael Pierce in Texas State Court . . . . Defendant was required to answer why he sued Pierce. It was for converting $10,000 paid to Pierce to travel to Spain on a case in which Pierce did not go; and did not repay or return the money";[40]

(3)      "Defendant having 6,000 to 10,000 clients in Panama in the Petroterminal coastal oil pollution cases";[41] and

(4)      "Patent infringement suit v. Schlumberger . . . . Defendant perfected the patents in that case but did not appear at the trial."[42]

---

[36] *Id.* at pp. 2–3.

[37] *Id.* at p. 3.

[38] *Id.*

[39] *Id.*

[40] *Id.* at p. 4.

[41] *Id.*

[42] *Id.*

Throughout his motion, Defendant represents that "[a] New Trial is not prayed for or is sought herein by Defendant,"[43] and that Defendant is "not seeking a New Trial."[44]

### 2.   Plaintiff's Arguments in Opposition

In opposition to Defendant's motion, Plaintiff argues that there was evidence sufficient to support its claim that there were oral contracts for services in the *Watts* case and the Texas Commission case.[45] According to Plaintiff:

> The testimony of both Jack W. Harang and his paralegal, Ron Welcker, were clear and unambiguous on this point. In addition, the Defendant acknowledged his indebtedness to the Plaintiff in the presence of his employee, Kelly Kelly, who testified to hearing such acknowledgment. Furthermore, the Plaintiff introduced the docket sheets from the two cases, P-2A and P-2B further evidencing the significant services performed on behalf of the Defendant.[46]

With respect to the $75,000 damage award, Plaintiff contends:

> The award of damages of $75,000.00 to the Plaintiff by the jury is more than supported by the record of this case. While it does not appear to be mathematically consistent with either the Plaintiff's testimony and/or evidence, it, more than likely, represents a discounted and compromised verdict of the Plaintiff's claim and the Defendant's affirmative defenses of his $171,000.000 in charges and the $250,000 loan agreement.[47]

Finally, Plaintiff contends that the Court's evidentiary rulings do not support granting Defendant's motion for judgment as a matter of law, stating: "These questions were timely objected to by the Defendant, and after due deliberation, this Court overruled the Defendant's objection.

---

[43]  *Id.* at p. 3.

[44]  *Id.* at p. 5.

[45]  Rec. Doc. 325 at p. 2.

[46]  *Id.*

[47]  *Id.* at p. 3.

While some of their inquiries may have been prejudicial, this Court determined that their probative value outweighed any such prejudicial effect."[48]

### 3. Defendant's Arguments in Further Support

In his reply, Defendant reiterates his argument that the oral contracts were not proven by at least one witness and other corroborating circumstances.[49] Further, Defendant argues that "if this Court is persuaded that sufficient admissible evidence was provided on hourly or other rates of pay for legal services, the record clearly shows that no evidence was provided this court [sic] that the rates assessed were reasonable and necessary, customary, usual or ever agreed to."[50]

Defendant also reasserts his position that "the jury's verdict is (1) unsupported by any or sufficient evidence, admitted evidence including lack of documents rejected by the Court as inadmissible; (2) counter to its finding that the Defendant met his burden in proving his three affirmative defenses."[51]

### B. Law and Analysis

### 1. Standard on a Motion for Judgment as a Matter of Law

Defendant appears to argue that the Court should grant his renewed judgment as a matter of law because Plaintiff offered insufficient evidence regarding the existence of the contracts, the jury's findings with respect to Defendant's affirmative defenses are inconsistent with its award of $75,000 to Plaintiff, and Plaintiff's trial tactics were unduly prejudicial. Rule 50(a)(1) provides:

---

[48] *Id.*

[49] *See* Rec. Doc. 343 at pp. 4–6.

[50] *Id.* at p. 6.

[51] *Id.* at p. 8.

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on the issue, the court may:
>
> (A)    resolve the issue against the party; and
>
> (B)    grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Motions under Rule 50(a)(1) may be renewed after trial pursuant to Rule 50(b), which states:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
>
> (1)    allow judgment on the verdict, if the jury returned a verdict;
>
> (2)    order a new trial; or
>
> (3)    direct the entry of judgment as a matter of law.

Regarding technical compliance with the requirements of Rule 50(b), the Fifth Circuit has emphasized that "the two basic purposes of this rule are 'to enable the trial court to re-examine the question of evidentiary insufficiency as a matter of law if the jury returns a verdict contrary to the movant, and to alert the opposing party to the insufficiency before the case is submitted to the jury.'"[52]

---

[52] *Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.*, 81 F.3d 606, 610 (5th Cir. 1996).

A motion pursuant to Rule 50(b) "in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict."[53] Therefore, under Rule 50 (b), "judgment as a matter of law is proper after a party has been fully heard by the jury on a given issue, and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue."[54] In evaluating a Rule 50(b) motion, a court "consider[s] all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party."[55] Because all reasonable inferences and credibility determinations should be resolved in favor of the non-movant, "judgment as a matter of law should not be granted unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion."[56]

### 2.    Plaintiff's Claims for Breach of Contract

The Louisiana Civil Code provides that "[a] contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished."[57] "A contract is formed by the consent of the parties established through offer and acceptance," and "[u]nless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of intent."[58] Under the Code, "[w]hen

---

[53] *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235 (5th Cir. 2001) (quoting *Ford v. Cimarron Ins. Co.,* 230 F.3d 828, 830 (5th Cir. 2000)).

[54] *Id.* (quoting *Ford,* 230 F.3d at 830) (internal quotations omitted).

[55] *Id.* (quoting *Brown v. Bryan Cnty.*, 219 F.3d 450, 456 (5th Cir. 2000)) (internal quotation marks omitted).

[56] *Id.* (*quoting Omnitech Int'l, Inc. v. Clorox Co.,* 11 F.3d 1316, 1322 (5th Cir. 1994)) (internal quotation marks omitted).

[57] La. Civ. Code art. 1906.

[58] La. Civ. Code art. 1927.

a writing is not required by law, a contract not reduced to writing, for a price or, in the absence of a price, for a value not in excess of five hundred dollars may be proved by competent evidence."[59] In cases where the value of the contract is over five hundred dollars, "the contract must be proved by at least one witness and other corroborating circumstances."[60] As the Louisiana Supreme Court explained in *Suire v. Lafayette City-Parish Consolidated Government*, "[t]he plaintiff himself may serve as the witness to establish the existence of the oral contract."[61] However, "the other corroboration must come from a source other than the plaintiff."[62] "The 'other corroborating circumstances' need only be general in nature; independent proof of every detail is not required."[63] To establish a *prima facie* case for breach of contract, a plaintiff must prove by a preponderance of the evidence (1) that the defendant undertook an obligation to perform certain tasks, (2) that the defendant breached that obligation, and (3) that the breach of contract resulted in damages to the plaintiff.[64]

With respect to attorneys' fees, the Louisiana Rules of Professional Conduct provide that "[a] lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses."[65] Factors bearing on whether a fee is reasonable include:

(1) the time and labor required, the novelty and difficulty of the questions involved,

---

[59] La. Civ. Code art. 1846.

[60] *Id.*

[61] 2004-1459 (La. 4/12/05), 907 So. 2d 37, 58.

[62] *Id.*

[63] *Id.*

[64] *See Garco, Inc. v. Rob's Cleaning & Powerwash, Inc.*, 2008-1249 (La. App. 4 Cir. 4/22/09), 12 So. 3d 386, 391 (citing *1436 Jackson Joint Venture v. World Constr. Co*, 499 So. 2d 426, 247 (La. App. 4 Cir. 1986)).

[65] La. R. Prof'l Conduct 1.5(a).

and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.[66]

Under the Rules of Professional Conduct, "the scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate."[67] Further, "[a]ny changes in the basis or rate of the fee or expenses shall also be communicated to the client."[68]

### 3.    Defendant's Affirmative Defenses

In this case, Defendant asserted three affirmative defenses: (1) accord and satisfaction, (2) estoppel, and (3) payment. The doctrine of accord and satisfaction is "a defense which estops the creditor from suing on the compromised debt."[69] To establish the defense of accord and satisfaction the defendant must prove by a preponderance of the evidence "[1] that there was an unliquidated or disputed claim, [2] a tender made by the debtor in full settlement of the claim, and [3] an acceptance

---

[66] *Id.*

[67] La. R. Prof'l Conduct 1.5(b).

[68] *Id.*

[69] *Oregon v. Sec. Indus. Funeral Homes, Inc.*, 96-2127 (La. App. 4 Cir. 2/26/97), 690 So. 2d 243, 245.

of the tender by the creditor."[70] That is, "there must be a contract to make full settlement of a claim for a specific consideration."[71]

With respect to estoppel, "[t]he doctrine is founded upon good faith and is designed to prevent injustice by barring a party from taking a position contrary to his acts, admissions, representations, or silence."[72] To establish the defense of estoppel, the defendant must prove three elements by a preponderance of the evidence: "(1) a representation by conduct or word; (2) justifiable reliable thereon; and (3) a change of position to one's detriment because of that reliance."[73]

Lastly, Defendant asserts the affirmative defense of payment. Under Louisiana law, "[b]y payment is meant, not only the delivery of a sum of money, when such is the obligation of the contract, but the performance of that which the parties respectively undertook, whether it be to give or to do."[74] "In the absence of an agreement providing otherwise, or the consent of the creditor to receive some other medium, payment may be made only in money."[75]

---

[70] *Id.*

[71] *Id.*

[72] *Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1156 (5th Cir. 1993) (quoting *Dizell v. Durr*, 519 So. 2d 863, 866 (La. App. 4th Cir. 1988)) (internal quotation marks omitted).

[73] *Id.* (citing *Howard Trucking Co. v. Stassi*, 485 So. 2d 915, 918 (La. 1986)).

[74] *Independent, Inc. v. Watson*, 394 So. 2d 710, 713 (La. Ct. App. 3d Cir. 1981) (citing La. Civ. Code art. 2131). The principles previously codified at Civil Code article 2131 are now in article 1854.

[75] *Independent, Inc.*, 394 So. 2d at 714 (quoting 70 *Corpus Juris Secundum* § 13) (internal quotation marks omitted).

### 3.     Analysis

#### a.     Plaintiff's Breach of Contract Claim

First, Defendant contends that Plaintiff offered insufficient evidence regarding the existence of the contracts and the reasonableness of attorneys' fees in the *Watts* case and the Texas Commission case. The parties stipulated at trial that "[n]o <u>written</u> contracts or <u>written</u> agreements were executed by and between the parties" for Plaintiff's services in representing Defendant.[76] Thus, Plaintiff had the burden of proving the existence of each contract "by at least one witness and other corroborating circumstances,"[77] which "need only be general in nature."[78] Further, Plaintiff himself could serve as the witness.[79]

In this case, Jack Harang testified that in 2010 he first agreed with Newton Schwartz to conduct a deposition in Lafayette, Louisiana in connection with the Texas Commission case and that following the deposition, Mr. Schwartz had Mr. Harang continue working on the Texas Commission case. Mr. Harang testified regarding the hours he worked and the tasks he accomplished, including preparing the case for trial, conducting jury selection, giving an opening statement, examining witnesses, and presenting a closing argument. Mr. Harang also testified that, at Mr. Schwartz's request, he enrolled as Mr. Schwartz's counsel in the *Watts* case. Mr. Harang testified that he drafted pleadings in the *Watts* case and engaged in settlement negotiations, and he specified the number of hours that he worked. Mr. Harang also testified that he and Mr. Schwartz had discussed that $500

---

[76] Rec. Doc. 320 at p. 6 (emphasis in original).

[77] La. Civ. Code art. 1846.

[78] *Suire*, 907 So. 2d at 58.

[79] *Id.*

per hour was a reasonable rate for Mr. Harang's services and that $100 per hour was a reasonable rate for Mr. Welcker's services.

Mr. Harang's testimony was corroborated by other testimony and circumstances. Ron Welcker testified that Mr. Schwartz said that he would pay Plaintiff for Mr. Harang's and Mr. Welcker's services. Mr. Welcker also discussed the amount of time he spent on the Texas Commission and the *Watts* cases, and he described the work done by Mr. Harang in those cases. Further, Kelly Kelly testified that Mr. Schwartz asked Mr. Harang to become involved in the Texas Commission case, detailed the pretrial and trial work done by Mr. Harang, and stated that Mr. Schwartz told Mr. Harang that he would pay for the legal services. Additionally, Robert Homes testified regarding Mr. Harang's representation of Mr. Schwartz in the *Watts* case. As the Louisiana Supreme Court instructed in *Suire*, corroborating circumstances "need only be general in nature."[80] Here, the testimony of Mr. Welcker, Mr. Kelly, and Mr. Homes regarding Mr. Harang's representation of Mr. Schwartz provides sufficient general corroboration.

Next, Defendant argues that there is insufficient evidence regarding whether Plaintiff's attorneys' fees were reasonable or whether Plaintiff and Defendant ever agreed to certain rates. Mr. Harang testified that he and Mr. Schwartz had discussed that $500 per hour was a reasonable rate for Mr. Harang's services and that $100 per hour was a reasonable rate for Mr. Welcker's services. Further, as noted above, the Louisiana Rules of Professional Conduct identify the "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly"[81] as a relevant factor. Mr. Kelly testified to the difficulties plaguing the

---

[80] *Suire*, 907 So. 2d at 58.

[81] La. R. Prof'l Conduct 1.5(a).

Texas Commission case prior to Plaintiff's representation of Mr. Schwartz, and Mr. Homes testified to the complexity of the issues in the *Watts* case. "The amount involved and the results obtained" also bear on whether a fee is reasonable. Here, there was testimony that Mr. Schwartz's career depended on the outcome of the Texas Commission case, and Plaintiff obtained favorable results for Mr. Schwartz in both matters. With respect to whether the parties agreed to Plaintiff's rates, the Rules of Professional Conduct provide that fees shall be communicated "preferably in writing . . . except when the lawyer will charge a regularly represented client on the same basis or rate."[82] While the $500 per hour rate was never reduced to writing, there was evidence that the parties discussed a rate of $500 per hour, and that parties had an ongoing relationship across numerous cases such that a written agreement was not necessary.

As discussed above, under Rule 50(b), judgment as a matter of law is appropriate only if "there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue."[83] In evaluating a Rule 50(b) motion, a court "consider[s] all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party,"[84] which in this case is the Plaintiff. Here, there is a sufficient evidentiary basis for the jury to conclude that contracts existed between Plaintiff and Defendant with regard to Plaintiff's representation of Defendant in the Texas Commission case and the *Watts* case. Resolving all credibility determinations in the light most favorable to Plaintiff, the Court notes that Mr. Harang testified to the existence of an oral contract, and that Mr. Welcker, Mr. Kelly, and Mr.

---

[82] La. R. Prof'l Conduct 1.5(b).

[83] *Flowers*, 247 F.3d at 235 (quoting *Ford,* 230 F.3d at 830) (internal quotations omitted).

[84] *Id.* (quoting *Brown*, 219 F.3d at 456) (internal quotation marks omitted).

Homes corroborated this testimony. Further, Mr. Harang testified that he and Mr. Schwartz had discussed hourly rates, and Mr. Kelly and Mr. Homes testified to the unique challenges posed by representing Defendant in the Texas Commission case and the *Watts* case. Accordingly, the Court concludes that the evidence is sufficient.

### b.   Court's Exclusion of Expert Testimony

As discussed above, Plaintiff offered sufficient evidence regarding the reasonableness of its attorneys' fees. However, the Court takes this opportunity to more specifically address Defendant's statements regarding the exclusion of expert witnesses. In his motion, Defendant asserts that "[t]he only expert on adequacy of time records and hourly rates of attorneys was precluded by the Court's *sua sponte* rejection of all deposition testimony of Lafayette, Louisiana attorney Ralph Kraft."[85]

In the parties' joint proposed pretrial order, dated June 3, 2014, Defendant stated that he would offer the video deposition of Ralph Kraft at trial; Plaintiff made no objection at that time.[86] However, on June 18, 2014, Plaintiff filed written objections to the deposition testimony of Mr. Kraft, arguing that Defendant had failed to demonstrate that Mr. Kraft was outside the subpoena power of the Court.[87] On June 20, 2014, the Court denied Plaintiff's objection as untimely.[88]

Although Plaintiff never objected to Mr. Kraft's qualifications, the Court's review of the proposed deposition testimony raised concerns regarding whether Mr. Kraft could properly be qualified as an expert in this matter. As the Court stated at trial, a district court has considerable

---

[85] Rec. Doc. 323-2 at p. 2.

[86] Rec. Doc. 279 at 18.

[87] Rec. Doc. 299.

[88] Rec. Doc. 310.

discretion to admit or exclude expert testimony under Federal Rule of Evidence 702.[89] Rule 702, which governs the admissibility of expert witness testimony, provides that an expert witness "qualified . . . by knowledge, skill, experience, training or education," may testify when "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."[90] Rule 702 requires that expert testimony (1) be based upon sufficient facts or data, (2) is the product of reliable principles and methods, and (3) applies the principles and methods reliably to the facts of the case.

In *Daubert*, the Supreme Court held that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable."[91] The Court's gatekeeping function thus involves a two-part inquiry into reliability and relevance. "A district court's *Daubert* inquiry need not take any specific form, and its *sua sponte* consideration of the admissibility of expert testimony is permissible so long as the court has an adequate record on which to base its ruling."[92]

First, the Court must determine whether the proposed expert testimony is reliable. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the

---

[89]   *See General Electric Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000) (citations omitted).

[90]   Fed. R. Evid. 702; *see also Daubert v. Merrel Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

[91]   *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (clarifying that the *Daubert* gatekeeping function applies to all forms of expert testimony).

[92]   *Miller v. Baker Implement Co.*, 439 F.3d 407, 413 (8th Cir. 2006) (citing *Kirstein v. Parks Corp.*, 159 F.3d 1065, 1067 (7th Cir. 1998)); *cf. Placida Prof'l. Ctr., LLC v. Fed. Deposit. Ins. Corp.*, 512 F. App'x 938, 954 (11th Cir. 2013) ("*Daubert* hearings are not required . . . and the district court was under no obligation to conduct a *Daubert* hearing to provide [plaintiff's expert] an additional opportunity to lay the foundation for his testimony." (citation and quotation omitted)).

evidence.[93] The reliability inquiry requires the Court to assess whether the reasoning or methodology underlying the expert's testimony is valid.[94] The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation.[95]

Daubert identified a number of factors that are useful in analyzing reliability of an expert's testimony: (1) whether the theory has been tested, (2) whether the theory has been subject to peer review and publication, (3) any evaluation of known rates of error, (4) whether standards and controls exist and have been maintained with respect to the technique, and (5) general acceptance within the scientific community.[96] In Kumho Tire, the Supreme Court emphasized that the test of reliability is "flexible" and that Daubert's list of specific factors does not necessarily nor exclusively apply to every expert in every case.[97] In addition to the five factors laid out in Daubert, a trial court may consider other factors, such as (1) whether the expert's opinion is based on incomplete or inaccurate data; (2) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion; and (3) whether the expert has adequately accounted for alternative explanations.[98] The overarching goal "is to make certain that an expert, whether basing testimony

---

[93] See Moore v. Ashland Chemical Inc., 151 F.3d 269, 276 (5th Cir.1998) (citing In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717 (3rd Cir.1994)).

[94] See Daubert, 509 U.S. at 589.

[95] See id. at 590.

[96] See id. at 592–94.

[97] Kumho Tire, 526 U.S. at 142; see also Seatrax, 200 F.3d at 372 (explaining that reliability is a fact-specific inquiry and the application of Daubert factors depends on the "nature of the issue at hand, the witness's particular expertise and the subject of the testimony").

[98] See, e.g., Black v. Food Lion Inc., 171 F.3d 308, 313 (5th Cir. 1999); Moore, 151 F.3d at 278–79; In re Vioxx Products Liability Litigation, 401 F. Supp. 2d 565, 573 (E.D. La. 2005) (Fallon, J.).

21

on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[99]

The Court must also determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will thereby assist the trier of fact to understand the evidence—in other words, whether it is relevant. The Federal Rules of Evidence define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[100]

The Court is cognizant that its role as a gatekeeper does not replace the traditional adversarial system.[101] As the Supreme Court noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[102] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[103]

Here, after reviewing the transcript of Mr. Kraft's proposed expert testimony, the Court found that it had almost no information regarding who Mr Kraft is; if, when, or where he was educated in the law; or what, if any, legal experience he has. In particular, the Court had no information regarding whether Mr. Kraft has any experience with charging hourly rates or evaluating the reasonableness of hourly rates, or whether Mr. Kraft, like Plaintiff and Defendant,

---

[99]   *Kumho Tire*, 526 U.S. at 152.

[100]   Fed. R. Evid. R. 401.

[101]   *See Daubert*, 509 U.S. at 596.

[102]   *Id.* (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[103]   *Id.* (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420 (5th Cir. 1987)).

was primarily familiar with contingency fees. The proposed testimony provided almost no information about what experience or methodology was employed by Mr. Kraft in arriving at his opinions. Further, because Mr. Kraft did not appear at trial, the Court lacked the ability, even outside the presence of the jury, to question him. The Court had no opportunity, prior to accepting Mr. Kraft's tender as an expert, to inquire into his qualifications, his experience, his education, and how he would add some specific information that would be helpful to the jury. Essentially, because the Court did not know what facts and data Mr. Kraft used, it could not decide whether they were sufficient. Additionally, because the Court had no information regarding what principles and methods Mr. Kraft employed, the Court could not determine whether they were reliable, or whether Mr. Kraft had reached conclusions based on his own subjective beliefs or unsupported speculations. Based on the proposed testimony, the Court did not have confidence that Mr. Kraft is actually a lawyer, that he is practicing law, and, if so, in what jurisdiction.

The Court gave Defendant an opportunity to point to any information in the deposition transcript that would qualify Mr. Kraft as an expert. However, Defendant was unable to do so. Accordingly, the Court excluded Mr. Kraft's deposition testimony pursuant its discretion to consider the admissibility of proposed expert testimony.[104]

At trial, Defendant also attempted to offer himself as an expert in attorneys' fees, and Plaintiff had an opportunity to *voir dire* Defendant on his qualifications. Based on Defendant's testimony during the *voir dire*, the Court concluded that Defendant had not established by a preponderance of the evidence that he possessed specialized knowledge in the area of reasonable hourly rates for attorneys representing defendants in civil matters. Rather, Defendant was primarily

---

[104] *See Miller*, 439 F.3d at 413 (citing *Kirstein*, 159 F.3d at 1067).

a plaintiff's attorney who had exclusively charged clients by contingency fee. The Court determined that Defendant had not shown that his opinion was based on sufficient facts or data or that his opinion was the product of reliable principles and methods. Further, the Court noted that during *voir dire*, Defendant referred to the factors set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*[105] as appropriate for the determination of hourly rates of attorneys. However, *Johnson* was overruled by the Supreme Court in the 2010 case *Perdue v. Kenny A. ex rel. Winn*,[106] and thus Defendant's purported methodology was inapplicable. Accordingly, the Court did not permit Defendant to testify as an expert witness, and instead only allowed him to proceed as a fact witness.

### c. Defendant's Affirmative Defenses

Second, Defendant argues that the evidence does not support the jury's verdict of $75,000 in light of the jury's finding that Defendant prevailed on his three affirmative defenses—accord and satisfaction, estoppel, and payment. As discussed above, under the doctrine of accord and satisfaction, "there must be a contract to make full settlement of a claim for a specific consideration."[107] For the defenses of estoppel and payment, however, there is no such all-or nothing requirement; it possible for the defenses to apply to only part of a debt.

In this case, before turning to the affirmative defenses, the jury initially found that two contracts existed and that Plaintiff was entitled to recover on both contracts: (1) a contract with regard to Plaintiff's representation of Defendant in Texas Commission case; and (2) a contract with

---

[105]   488 F.2d 714, 717-19 (5th Cir. 1974).

[106]   559 U.S. 542, 550 (2010).

[107]   *Sec. Indus. Funeral Homes, Inc.*, 690 So. 2d at 245.

regard to Plaintiffs representation of Defendant in the *Watts* case.[108] It is conceivable that accord and satisfaction settled Plaintiff's claim under one of these contracts, while estoppel and payment reduced the amount owed to Plaintiff under the other contract.

As discussed above, "judgment as a matter of law should not be granted unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion."[109] In this case, reasonable juries could conclude that Plaintiff was entitled to $75,000 and that Defendant had proven all three affirmative defenses. Accordingly, judgment as a matter of law on this basis is not warranted.

### d.   Court's Evidentiary Rulings

Finally, in his Rule 50 motion, Defendant contends that "Plaintiff's trial tactics, prejudicially and incurably and materially affected Defendant's substantive rights and prejudice."[110] In asserting this ground for judgment as a matter of law, Defendant appears to confuse Federal Rule of Civil Procedure 50 with Rule 59, which governs a motion for a new trial. As Wright and Miller explain:

> On a motion for new trial, the district court has wide discretion to order a new trial whenever prejudicial error has occurred. On a motion for judgment as a matter of law, it had no discretion whatsoever and considers only the question of law whether there is sufficient evidence to raise a jury issue.[111]

Defendant's arguments regarding the 1989 Texas disbarment suit, Defendant's previously filed civil suits, Defendant's clients in Petroterminal coastal pollution cases, and the patent infringement suit against Schlumberger do not bear on whether the evidence is sufficient to support the jury's award

---

[108]  Rec. Doc. 318-2.

[109]  *Flowers*, 247 F.3d at 235 (quoting *Omnitech Int'l, Inc.,* 11 F.3d at 1322 (internal quotation marks omitted).

[110]  Rec. Doc. 323-2 at p. 3.

[111]  9B Charles Alan Wright et al, *Federal Practice and Procedure* §  2531 (3d ed).

of $75,000 in damages. Rather, such contentions go toward possible prejudice. In Defendant's Rule 50 motion, however, Defendant repeatedly represents that "[a] New Trial is not prayed for or is sought herein by Defendant"[112] and that he is "not seeking a New Trial."[113] Accordingly, judgment as a matter of law on this basis is not warranted.

### III. Defendant's Motion for a New Trial

Despite the fact that Defendant repeatedly represented in his Rule 50 motion, which was filed on July 7, 2014, that he was not requesting a new trial, on July 22, 2014, Defendant filed a motion for leave to file "Defendant Newton B. Schwartz, Sr.'s Original Motion for a New Trial."[114] As a preliminary matter, the Court notes that Defendant's request for a new trial may be waived. Nonetheless, the Court will address Defendant's motion for a new trial on the merits.

**A.      Parties' Arguments**

**1.      Defendant's Arguments in Support**

In his motion for a new trial, Defendant first argues that "[t]he verdict is against the weight of the evidence; and/or the great weight of the admissible evidence."[115] According to Defendant, "there was no evidence or insufficient evidence of any . . . [o]ral or written contracts of engagement or employment by and between Plaintiff and Defendant on either case."[116] Further, Defendant avers that there was insufficient evidence to support $75,000 in damages.[117] Specifically, Defendant points

---

[112]  Rec. Doc. 323-2 at p. 3.

[113]  *Id.* at p. 5.

[114]  Rec. Doc. 331.

[115]  Rec. Doc. 341 at p. 1.

[116]  *Id.* at p. 2.

[117]  *Id.* at p. 3.

out that "[t]he Court correctly rejected the admission in evidence of Plaintiff APLC's August 1 and 2, 2013 deposition exhibits 1, 2, 3, and 4 as renumbered and rejected trial exhibits as not being proven up business records per Fed. R. Evid. 801 and/or 802 and not within any hearsay exceptions per Fed. R. Evid. 803, including 803(5)(6)(7)(14)(15) . . . ."[118] He additionally maintains that "the jury verdict is only evidentially supported in its findings that Defendant was entitled credits and offsets to and by Defendant's live trial testimony and exhibits."[119]

Second, Defendant asserts "Plaintiff's misconduct as grounds for a new trial."[120] Defendant alleges that there was "irreparable conduct by Plaintiff, which prejudicially influenced the jury verdict. This included violations of granted Defendant's Motions in Limine and over Defendant's timely objections."[121] More specifically, Defendant cites "[i]mproper and prejeducial questioning of Defendant as to (1) his prior Bar disciplinary suit in 1989; (2) his suing Michael Pierce in Panama; (3) his having 6,000 and not 10,000 Panamanian clients in an oil spill . . . ."[122]

Finally, Defendant contends that a new trial should be granted in light of

[t]he submission of the jury charge over objection by Defendant at the jury charge conference of Defendant's three affirmative defenses by Rule 8(c) accord and satisfaction, estoppel and payment, as submitted by Plaintiff. These instructions were substituted at the charge conference over Defendant's objections and granted in place of Defendant's and the Court's original proposed submission of these same affirmative defenses instead of Defendant's submitted issues in the above granted terms of dollar amount and monetization of such above payments, rents, services, attorneys fees, etc. Defendant timely objected to this substituted charge and

---

[118] *Id.*

[119] *Id.*

[120] *Id.* at p. 5.

[121] *Id.*

[122] *Id.*

instructions at the charge conference per FRCP 51(c)(1)(2) and/or FRCP 51(a)(2)(A).[123]

## 2.      Plaintiff's Arguments in Opposition

In opposition to Defendant's motion, Plaintiff avers that "[i]t appears that the first ground presented by the Defendant as a basis for his Motion for a New Trial is that there was no evidence or insufficient evidence to support the jury's verdict and that the verdict was against the weight of the evidence and/or the great weight of the admissible evidence."[124] Plaintiff responds that "[t]he Defendant refuses to recognize the testimony of Jack W. Harang, Ron Welcker, Robert Homes and Kelly Kelly as well as the documentary evidence submitted in support of the work performed on the Defendant's behalf."[125]

Next, Plaintiff states that "[t]he second basis presented by the Defendant as a basis for his Motion for New Trial is the Plaintiff's misconduct."[126] According to Plaintiff, "[t]he Defendant offers little if any support for this argument except his misstated allegations with regard to his Motion in Limine."[127] Further, Plaintiff maintains that "[i]t is difficult to understand how having 6,000, and not 10,000 Panamanian clients in an oil spill could have been prejudicial to him as he was the one, through his own narrative testimony, that opened the door to that line of questioning."[128]

---

[123] *Id.* at pp. 5–6.

[124] Rec. Doc. 335 at p. 2.

[125] *Id.* at pp. 2–3.

[126] *Id.* at p. 3.

[127] *Id.*

[128] *Id.*

28

With respect to Defendant's arguments concerning the jury charge, Plaintiff asserts that "[t]he charge as used by this Court represented the correct statement of the law relative to these affirmative defenses and in no way prejudiced to [sic] the Defendant."[129]

## B.   Law and Analysis

### 1.    Standard on a Motion for a New Trial

Federal Rule of Civil Procedure 59(a)(1)(A) states that a district court "may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." The decision to grant or deny a motion for a new trial is within the sound discretion of the trial court.[130] Although Rule 59(a) does not enumerate grounds for a new trial, the Fifth Circuit has explained that "[a] new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course."[131] Additionally, a new trial must be granted when the court is unable to logically reconcile an inconsistent jury verdict;[132] however, the court must make a "concerted effort" to reconcile apparent inconsistencies.[133]

---

[129] *Id.*

[130] *Pryor v. Trane Co.*, 138 F.3d 1024, 1016 (5th Cir. 1998).

[131] *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985); *see also Weckesser v. Chicago Bridge and Iron, L.G.*, 447 F. App'x 526, 529 (5th Cir. 2011) (quoting *Smith*).

[132] *See Fiber Systems Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1167–68 (5th Cir. 2006) ("If the jury gives inconsistent answers to special interrogatories, the case must be remanded for a new trial."); *Willard v. The John Hayward*, 577 F.2d 1009, 1011 (5th Cir. 1978) ("If the jury gives inconsistent answers to special interrogatories, the case must be remanded for a new trial . . . only if there is no way to reconcile them.")

[133] *Fiber Systems Int'l, Inc.*, 470 F.3d at 1168 (quoting *Ellis v. Weasler Eng'g Inc.*, 258 F.3d 326, 343 (5th Cir. 2001)) (internal quotation marks omitted).

### a.      Sufficiency of the Evidence

Although neither party addresses whether state or federal law provides the standard for reviewing the sufficiency of the evidence on a Rule 59 motion, the Court notes that this area of law has recently evolved. In the 1989 case *Jones v. Wal-Mart Stores, Inc.*, the Fifth Circuit concluded that in a diversity case, "state law determines the type of evidence that must be produced to support a verdict but 'the sufficiency or insufficiency of the evidence in relation to the verdict is indisputably governed by a federal standard.'"[134] However, in the 2008 case *Foradori v. Harris*,[135] the Fifth Circuit appeared to change course in light of the Supreme Court's 1996 decision in *Gasperini v. Center for Humanities, Inc.*[136] In *Foradori*, the Fifth Circuit explained that "[t]he Supreme Court in *Gasperini* held that, in an action based on state law but tried in federal court by reason of diversity of citizenship, a court must apply a new trial or remittitur standard according to the state's law controlling jury awards for excessiveness or inadequacy."[137] Although *Foradori* did not expressly overrule *Jones*, in its 2012 decision in *Fair v. Allen,*[138] the Fifth Circuit clarified that *Jones* is no longer good law. In *Fair*, the plaintiffs in a diversity case appealed the district court's denial of their motion for additur or a new trial, asserting that the district court had incorrectly applied the *Jones*

---

[134] *Jones v. Wal-Mart Stores, Inc.*, 870 F.2d 982, 986 (5th Cir. 1989) (quoting *McCandless v. Beech Aircraft Corp.*, 779 F.2d 200, 223 (5th Cir. 1985)).

[135] 523 F.3d 477 (5th Cir. 2008).

[136] 518 U.S. 415 (1996).

[137] *Foradori*, 523 F.3d at 497 (internal citations omitted).

[138] 669 F.3d 601 (5th Cir. 2012).

standard.[139] The Fifth Circuit held that under *Foradori*, the district court should have applied the

Louisiana state-law standard:

> Plaintiffs moved for additur and, failing that, new trial. Although both *Jones* and *Foradori* could be applied to this situation, *Foradori*, coming after an intervening Supreme Court decision, controls. Therefore, the district court erred in applying the federal standard; Louisiana law applies.[140]

Accordingly, in light of the Fifth Circuit's instruction in *Foradori* and *Fair*, the Court will apply

Louisiana law to Defendant's challenge to the adequacy of the evidence in his Rule 59 motion.

Under Louisiana law, "[a] new trial shall be granted . . . when the verdict or judgment

appears clearly contrary to the law and the evidence."[141] "The trial court's discretion in ruling on a

motion for new trial is great,"[142] and "the court can evaluate the evidence, draw it's [sic] own

inferences and conclusions, and determine whether the jury 'erred in giving too much credence to

an unreliable witness.'"[143] However, the Louisiana Supreme Court has cautioned:

> The fact that a determination on a motion for new trial involves judicial discretion, however, does not imply that the trial court can freely interfere with any verdict with which it disagrees. The discretionary power to grant a new trial must be exercised with considerable caution. Fact finding is the province of the jury, and the trial court must not overstep its duty in overseeing the administration of justice and unnecessarily usurp the jury's responsibility. A motion for new trial solely on the basis of being contrary to the evidence is directed squarely at the accuracy of the jury's factual determinations and must be viewed in that light. Thus, the jury's

---

[139] *See id.* at 604.

[140] *Id.*

[141] La. Code Civ. P. art. 1972(1).

[142] *Davis v. Wal-Mart Sores, Inc.*, 2000-0445 (La. 11/28/00), 774 So. 2d 84, 93.

[143] *Fair*, 669 F.3d at 605 (quoting *Joseph v. Broussard Rice Mill, Inc.*, 2000-0628 (La. 10/30/00), 772 So. 2d 94, 104)).

verdict should not be set aside if it is supportable by any fair interpretation of the evidence.[144]

Said differently, "[t]he scales are clearly tilted in favor of the survival of the jury's verdict."[145]

### b.      Prejudice

The standard for a new trial on the basis that the jury was influenced by bias, passion, or prejudice is governed by *Whitehead v. Food Max of Mississippi, Inc.*, where the Fifth Circuit held that "awards influenced by passion and prejudice are the antithesis of a fair trial."[146] *Whitehead* was a  civil suit against Kmart resulting from the kidnapping of a mother and daughter at knife-point from the store's parking lot; the mother was sodomized and raped in the course of the kidnapping.[147] Plaintiffs asserted that Kmart's failure to provide adequate security was a cause of their injuries.[148] At trial, counsel for the plaintiff engaged in a litany of improper arguments that seemed calculated to undermine the jury's impartiality.[149] Plaintiff's counsel repeatedly returned to arguments to which the trial court had sustained objections,[150] made highly prejudicial statements during argument that

---

[144] *Davis*, 774 So. 2d at 93 (quoting *Gibson v. Bossier City Gen. Hosp.*, 594 So. 2d 1332 (La. App. 2 Cir. 1991)).

[145] *Id.*

[146] *Whitehead v. Food Max of Mississippi, Inc.*, 163 F.3d 265, 276 (5th Cir. 1998) (determining that the jury award resulted from passion and prejudice and remanding for a new trial); *see also DP Solutions, Inc. v. Rollins, Inc.* 353 F.3d 421, 431 (5th Cir. 2003) (applying *Whitehead* to a motion for a new trial).

[147] *Whitehead*, 163 F.3d at 268.

[148] *Id.*

[149] *See id.* at 276–79. Plaintiff's counsel "made statements that appealed to local bias," *id.* at 276, "stated that Susan Whitehead's last thought before death would be of the rapists, and that Amy Whitehead needed to be compensated to avoid thoughts, on her wedding night, of her mother's rape," *id.* at 277, asked the jury to place themselves in the plaintiff's position, *id.* at 278.

[150] *See id.* at 276.

had no basis in the evidence,[151] and violated the rule against asking the jury to put themselves in the plaintiff's position.[152] In remanding the case for a new trial solely on the issue of damages, the Fifth Circuit noted that the particular circumstances of the case were "fertile ground" for bias, passion, and prejudice and that the improper statements were highly prejudicial to the defendant.[153] Additionally, the Fifth Circuit observed that the large size of the jury award ($3.4 million) was indicative of the influence of passion and prejudice on the jury.[154]

In contrast, in *DP Solutions, Inc. v. Rollins, Inc.*, the Fifth Circuit considered a breach of contract case concerning the development of a new computer system.[155] The jury had awarded plaintiff $756,000,000, and on appeal, defendant asserted that a new trial was warranted because "the closing argument . . . was theatrical and had repeated references to historical and literary figures associated with Texas."[156] The Fifth Circuit held that defendant was not entitled to a new trial.[157] The Fifth Circuit explained that counsel in *DP Solutions* did not engage in the same degree of repeated impropriety as counsel in *Whitehead*.[158] Further, as a contract dispute, the case did not lend itself to

---

[151] *See id.* at 277.

[152] *See id.* at 278.

[153] *Id.* at 276.

[154] *Id.* at 278.

[155] *See DP Solutions, Inc.*, 353 F.3d at 425–26..

[156] *DP Solutions, Inc.*, 353 F.3d at 431. For example, plaintiff's counsel referred to the Texan author Larry McMurtry's book *Lonesome Dove*, as well as to the notable Texans Stephen F. Austin, Benjamin Rush Milam, and Lyndon Johnson. *Id.* at 431 n.2.

[157] *Id.* at 433.

[158] *Id.* at 431–32.

the kind of incendiary statements found in *Whitehead*,[159] and the size of the jury award was "not inconsistent with reasonable deliberations on the evidence . . . ."[160]

### c.      Trial Error

In *Foradori*, the Fifth Circuit explained that "[a] new trial will not be granted based on trial error unless, after considering the record as a whole, the court concludes that manifest injustice will result from letting the verdict stand."[161]

### 2.      Analysis

### a.      Sufficiency of the Evidence

In his motion for a new trial, Defendant first argues that "[t]he verdict is against the weight of the evidence; and/or the great weight of the admissible evidence."[162] As discussed above, under Louisiana law, "[a] new trial shall be granted . . . when the verdict or judgment appears clearly contrary to the law and the evidence."[163] Although the trial court has discretion in ruling on a motion for new trial, "the jury's verdict should not be set aside if it is supportable by any fair interpretation of the evidence."[164]

As discussed in the context of Defendant's Rule 50 motion, in this case, there was evidence supporting the jury's conclusions that two contracts for attorneys' fees existed between Plaintiff and

---

[159] *Id.*

[160] *Id.* at 432.

[161] *Foradori*, 523 F.3d at 506.

[162] Rec. Doc. 341 at p. 1.

[163] La. Code Civ. P. art. 1972(1).

[164] *Davis*, 774 So. 2d at 93 (quoting *Gibson v. Bossier City Gen. Hosp.*, 594 So. 2d 1332 (La. App. 2 Cir. 1991)).

Defendant. Jack Harang testified that he agreed with Defendant to represent Defendant in the Texas Commission case and the *Watts* case, and Mr. Harang described the nature of the work he performed on both cases and the number of hours he worked on both cases. This testimony was corroborated by Ron Welcker, Kelly Kelly, and Robert Homes. Further, there was evidence regarding the reasonableness of attorneys' fees. Mr. Harang testified that he and Mr. Schwartz had discussed that $500 per hour was a reasonable rate for Mr. Harang's services and that $100 per hour was a reasonable rate for Mr. Welcker's services. Additionally as noted above, the Louisiana Rules of Professional Conduct identify the "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly"[165] as a relevant factor in assessing the reasonableness of attorneys' fees. Mr. Kelly testified to the difficulties plaguing the Texas Commission case prior to Plaintiff's representation of Mr. Schwartz, and Mr. Homes testified to the complexity of the issues in the *Watts* case. "The amount involved and the results obtained" also bear on whether a fee is reasonable. Here, there was testimony that Mr. Schwartz's career depended on the outcome of the Texas Commission case, and Plaintiff obtained favorable results in both matters.

In his motion for a new trial, Defendant contends that "[t]he Court correctly rejected the admission in evidence of Plaintiff APLC's August 1 and 2, 2013 deposition exhibits 1, 2, 3, and 4 as renumbered and rejected trial exhibits as not being proven up business records per Fed. R. Evid. 801 and/or 802 and not within any hearsay exceptions per Fed. R. Evid. 803, including 803(5)(6)(7)(14)(15) . . . ."[166] Although Defendant does not provide the trial exhibit numbers, it

---

[165] La. R. Prof'l Conduct 1.5(a).

[166] *Id.*

appears that Defendant is pointing out that the Court did not admit Plaintiff's timesheets into evidence. The timesheets Plaintiff sought to offer into evidence were not contemporaneous records of the hours expended in the Texas Commission case and the *Watts* case; rather, Jack Harang compiled these timesheets after the fact, based on notes he had taken on napkins and on a flyer. Thus, the Court ruled that the timesheets were not admissible under the hearsay exception for records of a regularly conducted activity in Federal Rule of Evidence 803(6). Although the timesheets themselves were never admitted into evidence, Jack Harang and Ron Welcker were still permitted to testify regarding the hours they worked on the *Watts* case and the Texas Commission case. Accordingly, this testimony supports the jury's finding that Plaintiff is entitled to damages for the hours spent representing Defendant.

Cognizant that "[t]he scales are clearly tilted in favor of the survival of the jury's verdict,"[167] and finding that the evidence in this case does support the jury's verdict, the Court concludes that a new trial is not warranted based on any alleged insufficiency of the evidence.

### b.    Prejudice

Second, Defendant asserts "Plaintiff's misconduct as grounds for a new trial,"[168] and specifically, he points to "[i]mproper and prejudicial questioning of Defendant as to (1) his prior Bar disciplinary suit in 1989; (2) his suing Michael Pierce in Panama; (3) his having 6,000 and not 10,000 Panamanian clients in an oil spill . . . ."[169]

---

[167] *Davis*, 774 So. 2d at 93.

[168] Rec. Doc. 341 at p. 5.

[169] *Id.*

With respect to the 1989 Texas disciplinary suit, the Court allowed Plaintiff to question Mr. Schwartz regarding a 1989 disciplinary action which resulted in a voluntary 60-suspension of Mr. Schwartz's law license. The Court determined that this testimony bore on the complexity and gravity of the Texas Commission case, considering it was Mr. Schwartz's second matter, and went to the credibility of Mr. Schwartz, who was a key defense witness. This questioning and testimony is not the sort that could inspire passion and prejudice against Defendant. Plaintiff in this case elicited limited testimony on a professional disciplinary matter; such testimony is especially unlikely to cultivate an undue bias against Defendant as this entire case is already premised on Plaintiff's representation of Defendant in a malpractice suit and a disciplinary proceeding.

Turning to the Michael Pierce suit, the Court allowed limited questioning about Mr. Schwartz's prior involvement in litigation regarding fee disputes. In the course of this questioning, Plaintiff asked Mr. Schwartz if he was familiar with Michael Pierce. Mr. Schwartz responded that he is currently in litigation with Michael Pierce because Mr. Pierce allegedly failed to move forward with a suit against a Chinese pharmaceutical company that had sold mislabeled drugs in Panama. This questioning and testimony is not the sort that could inspire passion and prejudice against Defendant. Unlike the attorney in *Whitehead* who exploited the trauma surrounding kidnapping and rape, Plaintiff in this case elicited limited testimony on another fee dispute in which Defendant is involved.

With respect to the Panamanian clients, Plaintiff asked Mr. Schwartz whether he had 10,000 Panamanian clients in connection with an oil spill. In his response, Mr. Schwartz corrected Plaintiff, saying that he had 6,000 clients. Defendant makes no attempt to demonstrate how making this

correction cultivates such passion and prejudice as to call into question the fairness of the jury's verdict.

Unlike the kidnapping and rape in *Whitehead*, this fee dispute does not present "fertile ground" for bias, passion, and prejudice on the part of the jury. Further, the $75,000 jury award in this case (when Plaintiff was asking for  $193,000) contrasts dramatically with the $3.4 million award in *Whitehead*, and provides no indication that some bias against the Defendant or sympathy for the Plaintiff affected the jury's verdict. Accordingly, the Court determines that a new trial is not warranted on the grounds that Plaintiff's conduct prejudicially influenced the jury's verdict.

### c. Jury Charges

Finally, Defendant avers that the Court erred in its "submission of the jury charge over objection by Defendant at the jury charge conference."[170] Defendant appears to asserts that the charges relating to Defendant's three affirmative defenses—accord and satisfaction, estoppel, and payment—should have "granted terms of dollar amount and monetization of such above payments, rents, services, attorneys fees, etc."[171]

On June 17, 2014, prior to trial, Defendant filed a proposed jury verdict form in this matter.[172] Defendant's proposal contained two interrogatories concerning his affirmative defenses. First, Defendant proposed:

> Do you find, by a preponderance of the evidence, Schwartz proved that the Plaintiff Harang accepted and received compensation in the form of free exchange of requested legal services and payment of costs and/or payments of Plaintiff's IRS tax

---

[170] Rec. Doc. 341 at p. 5.

[171] *Id.* at p. 6.

[172] Rec. Doc. 290.

liens, judgments, in the matters of <u>Candace Andrews v. Jack Harang</u> and/or <u>Jack Harang v. Delta Moving Services?</u>

ANSWER: "YES" or "NO"

ANSWER: _____ [173]

Defendant's second proposed instruction provided:

Do you find by a preponderance of the evidence, that Schwartz proved that Plaintiff Harang received payment in full compensation in kind and exchange for thirty months "rent-fee" furnished use of offices, staff, equipment, etc. March 2010—August 2012 at 1911 Southwest Freeway, Houston, Texas?

ANSWER: "YES" or "NO"

ANSWER: _____ [174]

Prior to the charge conference, based on the proposed jury verdict forms submitted by Plaintiff and Defendant, the Court circulated a draft verdict form with the following interrogatories:

**Interrogatory No. 3:**

Do you find that the Plaintiff accepted and received payment in the form of legal services, payment of costs, and/or payment of tax liens and judgments in the following matters: *In the Matter of the Marriage of Candice Andrews and Jack W. Harang* and *Harang v. Delta Moving Services, Inc.*?

Yes_____   No_____

**Interrogatory No. 4:**

Do you find that the Plaintiff accepted and received payment in the form of 30 months "rent-free" furnished use of offices, staff, and equipment, beginning in March 2010 through August 2012 at 1911 S.W. Freeway, Houston, Texas 77098?

Yes_____   No_____

---

[173] *Id.* at p. 23.

[174] *Id.* at p. 24.

At the charge conference, Plaintiff objected to Interrogatories No. 3 and No. 4, arguing that the interrogatories pointed the jury to specific evidence Defendant had offered in support of his three affirmative defenses. The Court agreed with Plaintiff and revised the jury verdict form to list Defendant's affirmative defenses without citing specific evidence. The revised form, which was ultimately submitted to the jury read:

**<u>Interrogatory No. 3:</u>**

Do you find that the Defendant has proven:

| | | | |
|---|---|---|---|
| a. | Accord and Satisfaction | Yes_____ | No_____ |
| b. | Estoppel | Yes_____ | No_____ |
| c. | Payment | Yes_____ | No_____[175] |

At the charge conference, the Court inquired whether either party objected to the revised interrogatory. Plaintiff had no objection; however, Defendant initially objected, stating he preferred the previous formulation.  However, Defendant then asked the Court whether he could state to the jury in his closing argument that if they found that no contract existed in the *Watts* case and the Texas Commission case, then they would not have to answer Interrogatory No. 3. The Court instructed that Defendant could make such a statement. In light of this determination, Defendant agreed to drop his objection to Interrogatory No. 3. At the close of the charge conference, no party had any objections to the verdict form. The Court revised the jury instructions and verdict form consistent with what occurred at the charge conference. It then provided the revised instructions and

---

[175] Rec. Doc. 318-2 at p. 2.

verdict form to the parties for review. Receiving no corrections or additions, proceedings resumed, and the jury was summoned.

Once proceedings resumed in the courtroom, however, and just before the jury was to enter the courtroom, Defendant raised an entirely new objection to the verdict form. He argued that in Interrogatory No. 3, the jury should provide the specific amount by which Defendant's affirmative defenses offset the damages owed Plaintiff. The Court noted that Defendant had not made this objection during the charge conference and that it was untimely.

As discussed above, "[a] new trial will not be granted based on trial error unless, after considering the record as a whole, the court concludes that manifest injustice will result from letting the verdict stand."[176] In his motion for a new trial, it is unclear whether Defendant takes issue with (1) the interrogatory's not specifying that his affirmative defenses were based on the rental of office space as well as the provision of legal services, payment of costs, and/or payment of tax liens and judgments in *In the Matter of the Marriage of Candice Andrews and Jack W. Harang* and *Harang v. Delta Moving Services, Inc.*, (2) the interrogatory's not requiring the jury to monetize the amount by which his affirmative defenses offset the damages owed to Plaintiff, or (3) both. The Court determined that citing the legal services, tax liens, and rental of office space in the interrogatory would improperly point the jury to specific evidence; further, Defendant withdrew his objection on this issue at the charge conference. With respect to monetization, Defendant did not raise this issue in his proposed verdict form or at the charge conference; rather, he raised it at the eleventh hour, just prior to the jury being brought in for closing arguments. In his motion for a new trial, Defendant cites no authority in support of his argument that the verdict form was erroneous.

---

[176] *Foradori*, 523 F.3d at 506.

41

Throughout this litigation, Defendant has failed to raise issues in a timely manner, dramatically complicating the pretrial, trial, and posttrial processes. Considering that Defendant's objection was untimely and that Defendant's own conduct has continually clouded the salient issues in this fee dispute, the Court, looking at the record as a whole, finds that overruling Defendant's objection did not result in manifest injustice. Accordingly, a new trial based on this issue is not warranted.

## IV. Conclusion

With respect to Defendant's Rule 50 motion, a motion for judgment as a matter of law pursuant to Rule 50(b) "in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict."[177] In this case, Plaintiff presented sufficient evidence establishing that oral contracts existed regarding Plaintiff's representation of Defendant in the *Watts* case and the Texas Commission case; further, there was sufficient evidence that the attorneys' fees were reasonable and that the rate was agreed upon or understood based on the parties' experience with each other.

Turning to Defendant's Rule 59 motion, a motion for a new trial pursuant to Rule 59(a) "may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course."[178] In this case, the evidence supported the jury's verdict. Further, Plaintiff's conduct during this trial on a fee dispute did not result in an "award[] influenced by passion and prejudice."[179]

---

[177] *Flowers,* 247 F.3d at 235.

[178] *Smith*, 773 F.2d at 613.

[179] *Whitehead*, 163 F.3d at 276.

Finally, the verdict form in this case, while not to Defendant's liking after the fact, did not cause any manifest injustice. Accordingly,

     **IT IS HEREBY ORDERED** that "Defendant's Motion for Judgment as a Matter of Law per F. R. Civ. P. 50(a)(1)(A)(B) and (2) and/or Judgment Notwithstanding the Verdict (JNOV) per F. R. Civ. P. 50(b)(3)"[180] is **DENIED**;

     **IT IS FURTHER ORDERED** that "Defendant Newton B. Schwartz, Sr.'s Original Motion for a New Trial"[181] is **DENIED**.

     **NEW ORLEANS, LOUISIANA**, this <u>15th</u> day of August, 2014.

                            **NANNETTE JOLIVETTE BROWN**
                            **UNITED STATES DISTRICT JUDGE**

---

[180] Rec. Doc. 323.

[181] Rec. Doc. 341.